## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## NEWARK VICINAGE

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are Covered Persons*, JANE DOE-1, *a law enforcement officer*, JANE DOE-2, *a law enforcement officer,* EDWIN MALDONADO, SCOTT MALONEY, JUSTYNA MALONEY, PATRICK COLLIGAN, PETER ANDREYEV, and WILLIAM SULLIVAN,<br><br>                    Plaintiffs,<br><br>v.<br><br>EQUIFAX INC., KOUNT INC., RICHARD ROES 1-10, *fictitious names of unknown individuals* and ABC COMPANIES 1-10, *fictitious names of unknown entities*,<br><br>                    Defendants. | Case No. _____ |

## <u>DEFENDANTS' NOTICE OF REMOVAL</u>

Equifax Inc. ("Equifax") and Kount Inc. ("Kount") (collectively, "Defendants") hereby jointly remove this action from the Superior Court of New Jersey Law Division, Bergen County to this Court. Removal is proper under 28 U.S.C. § 1441 and 28 U.S.C. § 1332 because the citizenship of Atlas Data Privacy Corporation ("Atlas") as assignee of the claims of New Jersey citizens should be disregarded as the result of collusive assignments intended to destroy diversity

jurisdiction.  Disregarding Atlas's citizenship, this Court has diversity jurisdiction over this matter because the true parties-in-interest are completely diverse, and the amount in controversy exceeds the jurisdictional minimum.

## Background

1.      On February 9, 2024 Plaintiffs Atlas, as the assignee for the claims of 19,393 individuals (the "assignors"), Jane Doe 1, Jane Doe 2, Edwin Maldonado, Scott Maloney, Justyna Maloney, Patrick Colligan, Peter Andreyev, and William Sullivan (collectively, "Plaintiffs") filed a Complaint against Equifax and Kount in the Superior Court of New Jersey Law Division, Bergen County in a civil action entitled *Atlas Data Privacy Corporation, et al. v. Equifax, et al.* Docket No. BER-L-000919-24 (the "State Court Action").  The Complaint also names fictitious Richard Roes 1–10 and ABC Companies 1–10.

2.      Defendants were served with notice of process on February 27, 2024.

3.      Pursuant to 28 U.S.C. § 1446(a), true and correct copies of "all process, pleadings, and orders" on file in the State Court Action are attached hereto as **Exhibit A**.

4.      Plaintiffs purport to bring claims against Defendants for alleged violation of Daniel's Law (N.J.S.A. 47-1A-1, *et seq.*, and N.J.S.A. 56:8-166.1), claiming that Defendants have failed to stop making available the home addresses

or unpublished home telephone numbers of covered persons upon request pursuant to the statute.  The individual plaintiffs are all law enforcement officers.

5.      Atlas also purports to assert claims on behalf of 19,393 unidentified judges, law enforcement officers, prosecutors, and their immediate family members who allegedly have assigned their claims against Defendants to Atlas.  Compl. ¶ 26.

6.      This Notice of Removal is based primarily on the allegations of the Complaint and does not admit the truth of the facts asserted in the Complaint, the validity of Plaintiffs' claims, or their entitlement to any form of relief.  Defendants expressly deny that Plaintiffs are entitled to any relief.

## **Legal Standard**

7.      "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).  "Thus, the grounds for removal should be made in 'a short plain statement,' just as required of pleadings under Fed. R. Civ. P. 8(a)."  *Grace v. T.G.I. Fridays, Inc.*, 2015 WL 4523639, at *3 (D.N.J. July 27, 2015).  "No evidentiary support is required, and the Court should accept a defendant's allegations unless they are contested by the plaintiff or questioned by the Court."  *Farrell v. FedEx Ground Package Sys., Inc.*, 478 F. Supp. 3d 536, 540 (D.N.J. 2020); *see also Vaccaro v. Amazon.com.dedc, LLC*, 2019 WL 1149783, at *3 (D.N.J. Mar. 13, 2019).  "Congress, by borrowing the

3

familiar 'short and plain statement' standard from Rule 8(a), intended to simplify the pleading requirements for removal and to clarify that courts should apply the same liberal rules to removal allegations that are applied to other matters of pleading." *Dart Cherokee*, 574 U.S. at 87.

8.    Defendants are entitled to remove the State Court Action under 28 U.S.C. § 1332(a)'s provisions for diversity jurisdiction.  Section 1332(a) vests the United States District Courts with original jurisdiction when (1) the parties are citizens of different states, and (2) the amount in controversy exceeds $75,000.

<u>**Diversity of Citizenship**</u>

9.    For diversity jurisdiction to exist under § 1332(a), there must be "complete" diversity, meaning all plaintiffs must be of different citizenship than all defendants.  *See, e.g.*, *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015).

10.    Equifax is a Georgia corporation with its principal place of business in Georgia, making it a citizen of Georgia only.  *See* 28 U.S.C. § 1332(c)(1); **Exhibit B**.    Its    headquarters    is    in    Atlanta,    Georgia.    *See,    e.g.*, https://investor.equifax.com/contact-us (last visited March 26, 2024).

11.    Kount is a Delaware corporation with its principal place of business in Idaho, making it a citizen of Delaware and Idaho.  *See* 28 U.S.C. § 1332(c)(1);

**Exhibit C**.  Kount is headquartered in Boise, Idaho.  *See* https://kount.com/about (last visited March 26, 2024).

12.    The fictitious defendants should be disregarded for purposes of removal.  *See, e.g.*, *Dozier v. E. Mfg. Corp.*, 2020 WL 3068191, at *1 (D.N.J. June 8, 2020).

13.    All individual plaintiffs are citizens of New Jersey.

14.    The Complaint alleges that Jane Doe-1 is a police officer working in northern New Jersey.  Compl. ¶ 15.  As a matter of New Jersey law, "[e]very member of a police department and force shall be a resident of the State of New Jersey while serving in such position."    N.J.S.A. 40A:14-122.8; *see also* N.J.S.A. 52:14-7 (defining "residency" in a way that functions the same as citizenship and that requires all executive, legislative, and judicial branch employees in New Jersey to reside in New Jersey).  Accordingly, Jane Doe-1 is a citizen of New Jersey.

15.    The Complaint alleges that Jane Doe-2 is a correctional police officer who lives in northern New Jersey.  Compl. ¶ 16.  Jane Doe-2 is a citizen of New Jersey.

16.    Maldonado is an officer in the Plainfield, New Jersey Police Department and is therefore a New Jersey Citizen.  Compl. ¶ 17.

17.    Scott Maloney and Justyna Maloney are police officers in Rahway, New Jersey who "live together in New Jersey with their two young children." Compl. ¶ 18.  They are New Jersey citizens.

18.    Colligan is a veteran of the Franklin Township Police Department in Somerset, New Jersey and is a New Jersey citizen.  Compl. ¶ 22.

19.    Andreyev is a veteran of the Point Pleasant, New Jersey police Department and president of the New Jersey State Policemen's Benevolent Association.  Compl. ¶ 23.  He is a New Jersey citizen.

20.    Sullivan is a veteran of the New Jersey Department of Corrections, and president of a New Jersey labor union.  Compl. ¶ 24.  He is a New Jersey citizen.

21.    Plaintiff Atlas—the assignee of the claims of over 19,000 likely New Jersey citizens—operates in New Jersey but is incorporated in Delaware.  Compl. ¶ 25.

22.    Although Atlas, like Kount, is registered in Delaware, Atlas's Delaware citizenship should be disregarded because it has been assigned the claims of New Jersey citizens in a collusive effort to destroy diversity jurisdiction.

23.    The Third Circuit recognizes that assignments made to "manufacture" diversity jurisdiction should be disregarded.  *See McSparran v. Weist*, 402 F.2d 867, 871 (3d Cir. 1968); *A.K. v. Fid. & Guar. Ins. Underwriters, Inc.*, 2023 WL 6231147, at *3 (D.N.J. Aug. 14, 2023) (assignee's citizenship controls only if "the assignment

was not a collusive ruse to create federal jurisdiction"); *see also* 28 U.S.C. § 1359 ("A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court.").

24.    The same standards that apply when a party collusively manufactures diversity jurisdiction apply when a party collusively *destroys* diversity jurisdiction. *See, e.g.*, *Grassi v. Ciba-Geigy, Ltd.*, 894 F.2d 181, 186 (5th Cir. 1990) ("Because of their similarity, assignments which destroy diversity and assignments which create diversity should be analyzed under the same standard."); Wright & Miller, 13F Fed. Prac. & Proc. Juris. § 3641 (3d ed.) (noting modern trend where "a number of federal courts have refused to ignore the possibility that a plaintiff may have engaged in a collusive attempt to manipulate the forum for a particular lawsuit and have retained removed cases on the basis of diversity jurisdiction after they have inquired into the validity of a state law transaction").

25.    On information and belief, Atlas is only a partial assignee, with some rights (financial, injunctive, or otherwise) still held by the assignors as the true claimants.  Indeed, it is unlikely that the assignors granted Atlas the entirety of their claims, including the full and potentially substantial damages each assignor can seek. *See infra* at ¶¶ 39–45 (discussing various and significant forms of damages in controversy).  That the assignments to Atlas are likely only partial weighs heavily in

favor of finding that the assignments collusively destroy diversity jurisdiction and that Atlas's citizenship should therefore be disregarded. *See, e.g.*, *Attorneys Trust v. Videotape Computer Products, Incorporated*, 93 F.3d 593, 597 (9th Cir. 1996) (observing that courts are "sensitive to and concerned by manipulations of their jurisdiction with partial assignments which lack reality and amount to no change in the identity of the party with the real interest in the outcome of the case").

26.    Even in the unlikely event that Atlas is a complete assignee, the Court can and should consider whether the assignments were made collusively to destroy diversity jurisdiction. *See, e.g.*, *id.* at 600 (courts "may look to all of the facts and circumstances and ask whether the assignment did destroy diversity jurisdiction"); Wright & Miller, § 3641 (noting modern trend is for courts to "exercise vigilance in protecting the rights of litigants to invoke federal jurisdiction by exercising their authority to examine the underlying nature of transactions that have the effect of destroying diversity jurisdiction").

27.    Whether the assignments are complete or partial, the fundamental issue remains:  the assignments are a collusive effort to destroy diversity jurisdiction and, because of that, Atlas's citizenship should not be considered for diversity jurisdiction purposes.

28.    The timeline of events shows that Atlas is a *de facto* contingent fee/litigation finance vehicle formed solely to serve as a litigation tool for Daniel's

Law claimants, Atlas's investors, and the lawyers representing Atlas at the Genova Burns, LLC and Morgan & Morgan law firms. Atlas did not exist when Daniel's Law was passed in November 2020, but it incorporated in Delaware just five months later. *See* **Exhibit D**.

29.     Then, in 2023, Genova Burns, LLC registered as a lobbyist for Atlas in New Jersey, **Exhibit E** at 5, pushing for amendments to Daniel's Law to specifically address assignments. Daniel's Law was amended on July 20, 2023 to allow claim assignments. *See* N.J.S.A. 56:8-166.1b, d. On information and belief, the purported assignments to Atlas were made after such amendment. *See* Compl. ¶ 26.

30.     Starting on January 4, 2024, the individual plaintiffs and each of the 19,393 purported assignors allegedly began sending Daniel's Law requests to Equifax and Kount through an email service created by Atlas specifically for that purpose. Compl. ¶ 52. But Atlas did not even register to do business in New Jersey until January 12, 2024. *See* **Exhibit D**.

31.     Equifax and Kount are not the only targets of Atlas's coordinated efforts. Atlas has also sued more than 130 other businesses—and it has moved to consolidate those lawsuits in five different counties. *See Atlas Data Privacy Corp. v. Pipl, Inc.*, Case No. MON-L-000481-24 (Monmouth County, NJ); *Atlas Data Privacy Corp., et al. v. New Jersey Property Records, LLC*, Case No. MID-L-000811-24 (Middlesex County, NJ); *Atlas Data Privacy Corp. v. Melissa Data*

*Corp.*, Case No. MRS-L-000224-24 (Morris County, NJ); *Atlas Data Privacy Corp. v. Enformion, LLC*, Case No. BER-L-000767-24 (Bergen County, NJ); *Atlas Data Privacy Corp. v. Whitepages, Inc.*, Case No. MER-L-000270-2 (Mercer County, NJ).

32.    Less than a month after registering to do business in New Jersey, Atlas filed this lawsuit (and the others), with its lobbying firm signing on as Plaintiffs' counsel.  *See generally* Compl.  Accordingly, Atlas exists solely to obtain these collusive assignments and monetize New Jersey's efforts to protect public officials through Daniel's Law.

33.    Courts in similar situations readily disregard the citizenship of an entity like Atlas when assessing diversity jurisdiction.  *See, e.g.*, *Attorneys Trust*, 93 F.3d at 595 (disregarding an entity's citizenship when there was "an assignment in name only" that "tampers with the jurisdiction of the court by artificially affecting it"); *Grassi*, 894 F.2d at 182 (disregarding an entity's citizenship when it had "no legitimate and independent interest in the litigation, but was simply providing litigation support services on a contingent fee arrangement at the behest of the appellants' attorney"); *see also NPD Management and Building Services, Inc. v. Geismar North America, Inc.*, 2021 WL 5231870, *3 (E.D. La. Nov. 10, 2021) ("[A] plaintiff may not make a 'collusive' partial assignment of its interests in the subject matter of litigation to destroy valid diversity jurisdiction and to prevent the removal

of an action to federal court."); *Cambridge Place Inv. Mgmt., Inc. v. Morgan Stanley & Co.*, 813 F. Supp. 2d 242, 244 (D. Mass. 2011) ("The Court must examine and disregard an assignment if it be found to have been made principally to defeat removal.") (quotation marks omitted); *JMTR Enterprises, L.L.C. v. Duchin*, 42 F. Supp. 2d 87, 92 (D. Mass. 1999) ("Under these circumstances, the assignment of this fractional interest should not have the effect of depriving . . . the noncitizen, of the federal forum which Congress has provided.") (quotation marks omitted); *Gentle v. Lamb-Weston, Inc.*, 302 F. Supp. 161, 166 (D. Me. 1969) (finding that diversity was not defeated where assignments were made to defeat an anticipated removal).

34.     To the extent the citizenship of the assignors is relevant, they are all almost certainly New Jersey citizens.  The state law under which the claims arise apply to "covered persons," who are *New Jersey* judges, law enforcement officers, child protective investigators, and prosecutors, and their immediate family living in the same household.   N.J.S.A.  § 56:8-166.1d; *see also*  N.J.S.A.  52:14-7 (all executive, judicial, and legislative branch officers and employees must be New Jersey residents).  At the very least, the Complaint makes no allegations at all to suggest any assignor is (or could be) a citizen of Delaware, Idaho, or Georgia.

35.     Finally, if the Court has any doubt about diversity of citizenship, it should order jurisdictional discovery into Atlas and the assignments at issue.  The discovery should focus on the factors relevant to the diversity analysis under *Grassi*

and its progeny, such as the size of the interest assigned, whether the assignee had any interest in the matter before the assignment, whether the assignor and assignee had separate counsel, whether the assignee's attorney is controlling the litigation, the timing of the assignment, whether the assignment could be considered a sort of contingent fee arrangement, and whether there was a strong likelihood of prejudice against the defendant. *See* 894 F.2d at 186. The discovery should include production of the 19,393 assignment agreements themselves, as well as depositions of a sampling of the Daniel's Law claimants related to whether the assignments to a Delaware-registered corporation formed solely for purposes of this litigation were, in fact, collusive to try to destroy diversity jurisdiction in this litigation. Courts regularly permit such jurisdictional discovery. *See, e.g.*, *NPD Management and Building Services, Inc.*, 2021 WL 5231870 at *2 (reaching collusive assignment decision after jurisdictional discovery); *Cambridge Place Inv. Mgmt., Inc.*, 813 F. Supp. 2d at 244 (same); *see also Lincoln Ben. Life Co.*, 800 F.3d at 108 (district courts can order jurisdictional discovery); *Hagenbaugh v. Nissan N.A.*, 2022 WL 676277, at *4–5 (M.D. Pa. Mar. 7, 2022) (allowing a removing defendant to take jurisdictional discovery because the plaintiff challenged allegations in the notice of removal); *Mithril GP Emp. Feeder LLC v. McKellar*, 2020 WL 3206555, at *1 (D. Del. June 15, 2020) (same).

36.    For those reasons, the diversity of citizenship requirement is satisfied.

## **Amount in Controversy**

37.    The amount in controversy requirement for jurisdiction under § 1332(a) is also satisfied.

38.    Traditional diversity of citizenship jurisdiction requires that the amount in controversy exceed $75,000.   28 U.S.C. § 1332(a).   When "the plaintiff's complaint does not include a specific monetary demand, the removing defendant need only plausibly allege the amount in controversy." *Yucis v. Sears Outlet Stores, LLC*, 813 F. App'x 780, 782 n.2 (3rd Cir. 2020) (cleaned up).   Only a single plaintiff need satisfy the requirement.   Once any plaintiff satisfies the requirement, the Court can exercise supplemental jurisdiction over all other plaintiffs, regardless of the value of their claims.   *See, e.g.*, *Exxon Mobil Corp. v. Allapattah Servs., Inc*., 545 U.S. 546, 549 (2005); *Burgess v. Bennet*, 2021 WL 1050313, at *5 n.9 (D.N.J. Mar. 19, 2021).

39.    Each individual plaintiff on his or her own satisfies the amount in controversy requirements.   Every individual plaintiff seeks (1) "actual damages, not less than the liquidated damages under Daniel's Law, at '$1,000 for each violation,'" (2) "an additional amount in punitive damages, to be determined by the Court, for 'willful noncompliance' as allowed under Daniel's Law," (3) "reasonable attorneys' fees," and (4) "injunctive relief."   Compl., Prayer for Relief.   Defendants deny that Plaintiffs have adequately pled or could establish any violation of the law or

corresponding damages—and the arguments herein cannot, and should not, be construed as conceding liability or damages.  *See Schor v. State Farm Fire and Cas. Ins. Co*., 2015 WL 1230200, at \*4 n.1 (E.D. Pa. Mar. 18, 2015).  But based on the allegations, each Plaintiff has separately put far more than $75,000 in controversy.

40.    As to liquidated actual damages, Daniel's Law provides that the Court shall award "actual damages, but not less than liquidated damages computed at the rate of $1,000 for each violation of this act."  N.J.S.A. 56:8-166.1c(1).   The Complaint alleges multiple violations of Daniel's Law as to each individual plaintiff; specifically, Plaintiffs allege that a violation occurred due to each disclosure of each covered person's (1) home address and (2) unlisted home telephone number.  Compl. ¶¶ 28, 53–54, 58–62.  Additionally, the law awards damages for "each violation of this act" without defining "violation."  The Complaint thus puts at issue whether each plaintiff suffered a new violation each and every separate time the Defendants allegedly did not comply with Daniel's Law.  *See, e.g.*, *Karnes v. Kankakee Hospitality, LLC*, 2021 WL 12171751, at \*3-\*4 (C.D. Ill. Sept. 25, 2021) (denying a motion to remand in a case under the Illinois Biometric Information Privacy Act ("BIPA") where the plaintiff placed more than $75,000 in controversy based on allegations that plaintiff was employed by the defendant for 35 days and had daily collection of her biometrics); *Peatry v. Bimbo Bakeries USA, Inc*., 393 F. Supp. 3d 766, 769 (N.D. Ill. 2019) (denying a motion to remand and holding that the plaintiff

plausibly alleged more than $75,000 in damages because the plaintiff's complaint and BIPA could support that a violation "occurred every time [plaintiff] and the putative class members clocked in and out of work").   By alleging multiple violations for each Plaintiff, and clocking each of those distinct violations at $1,000 in liquidated damages, the Complaint places into controversy a significant award of liquidated damages as to each individual plaintiff.   *See* Compl. ¶ 54 (alleging Defendants failed to notice and "cease the disclosure *or re-disclosure*" of the information) (emphasis added).

41.    Even setting aside Daniel's Law's liquidated damages provision, Plaintiffs have alleged non-liquidated actual damages that could plausibly exceed $75,000.  For example, the individual plaintiffs allege that threats caused them to relocate their family homes, Compl. ¶ 17, install camera systems and security alarms, *id.* ¶ 22, and train their family members on how to handle attacks, *id.*  Plaintiffs have placed at issue claims that exceed the statutory minimum of $1,000 and potentially extend into the tens of thousands of dollars.

42.    In addition, Plaintiffs have made allegations that could support an award of unliquidated emotional distress damages.   *See, e.g.*, Compl. ¶¶ 19-21 (Plaintiff Maloney alleging that he has received "death threats and calls for violence").   Courts have recognized that emotional distress of the kind Plaintiffs allege here can support a damages award significantly exceeding $75,000. *See, e.g.*,

*Yucis*, 813 F. App'x at 782, n.2 (holding that the plaintiff plausibly alleged more than $75,000 in controversy based on emotional distress allegations). On this issue, jury verdicts awarding emotional distress damages are informative. *See Chinchilla v. Geodis Am., Inc.*, 2024 WL 943424, at *5 (D.N.J. Mar. 5, 2024) (considering jury verdicts when assessing amount in controversy based on emotional distress damages). And courts have regularly awarded (or affirmed) such verdicts in the six figures. For example, one court awarded $315,000 in emotional distress damages against Equifax for the improper handling of personal identifying information. *See Drew v. Equifax Info. Servs., LLC*, 2010 WL 5022466, at *3 (N.D. Cal. Dec. 3, 2010). Several similar six-figure awards have been upheld. *See, e.g.*, *Witkowski v. Int'l Broth. of Boilermakers*, 404 F. App'x 674, 676, 679 (3rd Cir. 2010) (affirming $109,300 award); *Sloane v. Equifax Info. Servs., LLC*, 510 F. 3d 495, 505–06 (4th Cir. 2007) (affirming $245,000 award).

43. The individual plaintiffs' claim for punitive damages further establishes that the amount in controversy exceeds $75,000. The Third Circuit has held that claims for punitive damages that are made in good faith "will generally satisfy the amount in controversy requirement because it cannot be stated to a legal certainty that the value of the plaintiff's claim is below the statutory minimum." *Huber v. Taylor*, 532 F.3d 237, 244 (3rd Cir. 2008) (emphasis omitted); *see also Quinones-Velazquez v. Maroulis*, 677 F. App'x 801, 804 (3rd Cir. 2017) (vacating a district

16

court remand order because, even if the plaintiff's compensatory damages were only $8,350, the district court failed to consider punitive damages). Notably, "[u]nder New Jersey law, punitive damages are capped at 'five times the liability of that defendant for compensatory damages or $350,000, *whichever is greater*,'" and courts assume that standard applies when assessing the amount in controversy for New Jersey state law claims. *Atl. Util. Trailer Sales Inc. v. Harco Nat'l Ins. Co.*, 2020 WL 3287129, at *2 (D.N.J. June 18, 2020) (quoting N.J.S.A. 2A:15-5.14) (emphasis added). Plaintiffs' claims for punitive damages thus necessarily put $350,000 in controversy—and possibly even more than that based on New Jersey's five-times multiplier. Ultimately, Plaintiffs' request for punitive damages is alone dispositive on the amount in controversy question. *See, e.g.*, *Valenta v. BI Inc*., 2021 WL 7185785, at *5 (W.D. Pa. Oct. 8, 2021) ("Because Plaintiff's request for punitive damages is appropriately made, this is generally sufficient to satisfy the amount in controversy."); *Johnson v. State Farm Life Ins. Co*., 695 F. Supp. 2d 201, 207-08 (W.D. Pa. 2010) (holding that the amount in controversy was satisfied based on plaintiff's request for punitive damages, even though alleged compensatory damages were only $10,000). But punitive damages are not considered in isolation—they must be combined with compensatory damages to assess the amount in controversy. *See, e.g.*, *Raspa v. Home Depot*, 533 F. Supp. 2d 514, 522 (D.N.J.

2007) (combining punitive damages with compensatory damages to assess amount in controversy).  That combination here certainly exceeds $75,000.

44.    For amount in controversy purposes, a potential award of attorneys' fees "must" be considered and combined with compensatory and punitive damages. *See, e.g.*, *Suber v. Chrysler Corp*., 104 F.3d 578, 585 (3rd Cir. 1997); *Venuto v. Atlantis Motor Grp., LLC*, 2017 WL 4570283, at *3 (D.N.J. Oct. 13, 2017); *Andrews v. Home Depot U.S.A., Inc*., 2010 WL 5464303, at *3 (D.N.J. Dec. 29, 2010). Plaintiffs seek attorney's fees, and Daniel's Law authorizes the recovery of them. N.J.S.A. 56:8-166.1c(3).  Courts in the Third Circuit have awarded attorney's fees in the amount of 30 percent of the final judgment.  *See, e.g.*, *Ciccone v. Progressive Specialty Ins. Co*., 2020 WL 7319777, at *4 (M.D. Pa. Dec. 11, 2020) (including attorneys' fees in the amount of 30 percent of the total of plaintiff's compensatory and treble damages to find that plaintiff's individual claims met the amount in controversy); *Rodriguez v. Burlington Cty. Corrections Dept*., 2015 WL 790521, at *2 (D.N.J. Feb. 25, 2015) ("The Third Circuit has noted that attorney's fees can be estimated to be as high as 30% of the final judgment.").  As already explained, the compensatory and punitive damages at issue already exceed $75,000 for each individual plaintiff.  When increasing that damages amount by another 30 percent, § 1332(a)'s amount in controversy requirement is plainly satisfied.

45.    Finally, Plaintiff's request for—and Daniel's Law's authorization of—injunctive relief provides yet another amount that must be aggregated for the amount in controversy.  *See, e.g.*, *Columbia Gas Transmission Corp. v. Tarbuck*, 62 F.3d 538, 541 (3rd Cir. 1995).  The dollar amount assigned to injunctive relief focuses on the value of the object of the litigation, with a focus on the value to the plaintiff.  *See id.*; *USAA Casualty Ins. Co. v. CIT Bank N.A.*, 2018 WL 3213324, at *4 (D.N.J. May 15, 2018).  Plaintiffs request an injunction requiring Defendants to comply with Daniel's Law and remove their protected information "wherever disclosed," as well as the appointment of a "qualified independent expert to ensure that Defendants prospectively maintain compliance with Daniel's Law."  Compl., Prayer for Relief.  The value to Plaintiffs of Defendants' ongoing and in-perpetuity compliance with Daniel's Law is difficult to quantify.  But given Plaintiffs' allegations that they are exposed to threats of harassment, violence, and murder, *see, e.g.*, Compl. ¶ 15, 16, 19, 21, it stands to reason that Plaintiffs place significant value on the injunctive relief sought, further confirming that the amount in controversy is satisfied.  *See Texas Eastern Transmission Corp. v. Giannaris*, 818 F. Supp. 755, 758–59 (M.D. Pa. 1993) (holding public interest in safety from possible physical catastrophe due to an improperly maintained pipeline exceeded the jurisdictional amount).

46.    For those reasons, the amount in controversy for each Plaintiff's claims is well over $75,000.

19

47.     Because both the diversity of citizenship and amount in controversy requirements are satisfied, the requirements of diversity jurisdiction under § 1332(a) are satisfied.

## 28 U.S.C. § 1446 Requirements

48.     This Notice of Removal is timely filed.  *See* 28 U.S.C. § 1446(b)(1) (establishing a deadline for removal of 30 days after service).  Defendants were served on February 27, 2024, giving them until March 28, 2024 to file a notice of removal.

49.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 110, 1391, 1441(a), and 1446(a), because the Superior Court of New Jersey Law Division, Bergen County, where the Complaint was filed, is a state court within the District of New Jersey.

50.     Pursuant to 28 U.S.C. § 1446(a), a "copy of all process, pleadings, and orders served upon" Defendants are attached to this Notice of Removal as **Exhibit A**.  Defendants have not answered or otherwise filed a response to the Complaint.

51.     Pursuant to 28 U.S.C. § 1446(d), a Notice of Filing Notice of Removal is being filed with the Superior Court of New Jersey Law Division, Bergen County, a copy of which is attached and marked as **Exhibit F**, and Defendants will give written notice to Plaintiff that this action has been removed to this Court.

52.     Both Equifax and Kount join this removal petition.

53.    As of the date of this removal, neither Defendant has filed a responsive pleading to the Complaint.  Defendants reserve all rights to assert any and all defenses or otherwise respond to the Complaint.  Defendants further reserve the right to amend or supplement this Notice of Removal.  By filing this Notice of Removal, Defendants do not waive any defense that may be available to them and reserve all such defenses, including but not limited to those related to service of process and lack of personal jurisdiction.

## **CONCLUSION**

WHEREFORE, Defendants hereby give notice that the matter entitled *Atlas Data Privacy Corporation v. Equifax Inc., et al*, pending in the Superior Court of New Jersey Law Division, Bergen County, is removed to the United States District Court for the District of New Jersey, and requests that the Court retain jurisdiction for all further proceedings in the matter.

Respectfully submitted, this 27th day of March, 2024

*/s/ Thomas J. Scrivo*

Thomas J. Scrivo
King & Spalding LLP
1185 Avenue of the Americas
34th Floor
New York, NY  10036-2601
Tel: 212-556-2100
Fax: 212-556-2222
Email: tscrivo@kslaw.com

Zachary A. McEntyre*
John C. Toro*

King & Spalding LLP
1180 Peachtree Street
Atlanta, GA  30309
Tel.: (404) 572-4600
Fax: (404) 572-5100
Email: zmcentyre@kslaw.com
Email: jtoro@kslaw.com

*Pro Hac forthcoming*
*Counsel for Equifax Inc. and*
*Kount Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 27, 2024, the foregoing was served via email

to the following attorneys of record:

| | |
|---|---|
| Rajiv D. Parikh<br>Kathleen Barnett Einhorn<br>GENOVA BURNS LLC<br>494 Broad Street<br>Newark, NJ  07102<br>rparikh@genovaburns.com<br>keinhorn@genovaburns.com | John A. Yanchunis<br>Ryan J. McGee<br>MORGAN & MORGAN<br>201 N. Franklin Street, 7th FL<br>Tampa, FL  33602<br>jyanchunis@ForThePeople.com<br>rmcgee@ForThePeople.com |

*/s/ Thomas J. Scrivo*
Thomas J. Scrivo